**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

RICHARD RUSSELL, SHERRI          :
BRISTOW, JASON ANTHONY,          :
JIM LAOS, REGINA BEDELL,         :
JEREMIAH DOWD, and               :
KATHERINE LILLEY, individually   :
and on behalf of others similarly :
situated,                        :
                                 :   CIVIL ACTION NO.
           Plaintiffs,           :
                                 :   1:06-CV-00659-RWS
                                 :
        v.                       :
                                 :
                                 :
                                 :
PROMOVE, LLC, TODD WHITE,        :
and TEXAS PME, LLC,              :
                                 :
           Defendants.           :

## <u>ORDER</u>

This action comes before the Court on Defendant Todd White's Motion

for Summary Judgment on All Claims Asserted Against Him [97]; Defendant

Todd White's Motion to Stay the Proceedings Against Him [114]; and

Plaintiffs' Motion to Supplement their Response in Opposition to Defendant

Todd White's Motion for Summary Judgment [122].[1]  After reviewing the

entire record, the Court enters the following Order.

## Background

This is a minimum wage and overtime class action.  Plaintiffs are former

employees of Defendants' residential housing placement company at various

branch offices.  They brought this action pursuant to the Fair Labor Standards

Act, 29 U.S.C. § 201 et seq. ("FLSA"), against Promove LLC, Texas PME,

LLC (collectively "Promove"), and Promove's former CEO, Todd White, to

recover minimum wage and overtime compensation that they allege was

---

[1] Plaintiffs initially filed a Motion for Sanctions [122] contemporaneous with their Motion to Supplement [122], but have since withdrawn that Motion.  (See Pls.' Reply Br. in Supp. of Mot. to Supp. [131] at 1.)  The Clerk is therefore **DIRECTED** to **REMOVE** Plaintiffs' Motion for Sanctions from the pending motions list.

On December 7, 2006, Defendants Promove, LLC and Texas PME, LLC filed voluntary petitions under Chapter 11 of Title 11 of the United States Code, captioned In re: Renter Magnet, LLC d/b/a Promove, LLC, No. 06-76033-crm (N.D. Ga. Bankr. filed Dec. 7, 2006), and In re: Promove Texas, LLC d/b/a Promove, No. 16-76036-crm (N.D. Ga. Bankr. filed Dec. 7, 2006), in the United States Bankruptcy Court for the Northern District of Georgia.  (See Ex. A. to Def. White's Mot. to Stay [114].)  This action is automatically stayed with respect to Defendants Promove, LLC and Texas PME, LLC. See 11 U.S.C. § 362(a)(1).  For this reason, the Court does not address Defendants' Motion for Summary Judgment on Plaintiff Bedell's Claims [90] and Plaintiffs' Motion for Summary Judgment [95], as both implicate the debtor-Defendants.

AO 72A
(Rev.8/82)

unlawfully withheld from them and others similarly situated during their employment.

By Order dated November 9, 2006 [100], the Court certified a class of Promove employees who held the title of "property specialists" and "senior property specialists" in the three years prior to the mailing of notice to the prospective class.  (See Order of Nov. 9, 2006 [100] at 6.)  Pursuant to that Order, the relevant time period of the events giving rise to this lawsuit is approximately November 2003 - November 2006.

Since the entry of the Court's Order of November 9, 2006, Defendant Todd White has moved for summary judgment, arguing that he was not, during the relevant time period, an "employer" of Plaintiffs, as that term is defined by the FLSA, and thus may not be held liable for any alleged overtime or minimum-wage violations.  As this case comes before the Court on Defendant White's Motion for Summary Judgment, the Court considers the facts in a light most favorable to Plaintiffs.

3

I.    **Facts**

Promove is an Atlanta-based apartment hunting company which provides a service to individuals seeking residential housing.   Promove employs approximately 80 to 90 "property specialists," who assist customers in its seven Atlanta locations and two Texas locations.  (See Pl.'s St. of Mat. Facts [106-3] ["PSMF"] ¶¶ 4-5.)  In a typical transaction, a Promove property specialist meets with a customer at one of the company's nine locations and assists the customer in finding residential housing.  If the property specialist successfully places a customer, she receives a commission.  Property specialists work solely for commissions and often work in excess of forty hours per week.

Defendant Todd White founded the predecessor to Promove, Promove America, Inc. ("Promove America"), in 1990.  (See Pls.' Resp. to Defs.' St. of Mat. Facts [106-2] [hereinafter "Pl.'s Resp. to DSMF"] ¶ 1.)  He hired approximately six employees and set their compensation on a commission-only basis.  (White Dep. [106-9] at 9-13.)  In 1994 or 1995, after the company expanded, he sold his ownership interest in the company but continued to work for Promove America.  (See Pls.' Resp. to DSMF ¶¶ 2-3.)  In October 1997, Intelligent Consumer Holdings purchased the assets of Promove America

4

through Promove, LLC ("Promove").  In connection with the acquisition,

Promove hired Mr. White as its President and CEO.  (See Pls.' Resp. to DSMF

¶¶ 4, 5, 7; PSMF ¶ 10.)  As a part of his compensation package, Mr. White

received a ten percent (10%) ownership interest in Promove, which he still

retains today.  (See Pls.' Resp. to DSMF ¶¶ 6, 9.)  Mr. White resigned briefly as

Promove's President and CEO in the Spring of 2000, but returned to Promove

in May of 2002 as its Acting CEO, continuing in that position until September

2004.[2]  (See Pls.' Resp. to DSMF ¶ 13.)  More factual detail concerning the

nature of Mr. White's role as CEO and the extent of his involvement in

supervising property specialists is discussed *infra* in the Discussion section of

the Court's Order.

In September 2004, Mr. White resigned from his position as acting CEO,

but remained affiliated with Promove until April 2006.  The record is less clear

concerning Mr. White's role at Promove during this time period.  He remained

on the company payroll at least through December 2005 and was listed as

---

[2] Defendant White resists the characterization of his position as CEO, preferring instead that he was "not given a title but was commonly referred to as the acting CEO." (Defs.' St. of Mat. Facts [97-13] ["DSMF"] ¶ 13.)  Nevertheless, the record reflects that Mr. White presented himself to Promove employees as the company's CEO.  (See id.; White Dep. [106-9] at 16; Pls.' Resp. to DSMF ¶ 13.)

"Founder" of Promove.  (Ex. 4 to Pls.' Resp. in Opp. to Summ. J. [106-7].)  In

January 2005, Mr. White entered into an Operating Agreement with Promove

designating him as one of four members of Promove's Board of Managers.

(See White Decl. [114-5] ¶ 10; Ex. 3 to White Decl.)  In December 2005, Mr.

White entered into an Amended Operating Agreement designating Mr. White in

a similar capacity, and providing that Mr. White, as a member of the Board,

had, among other things, "the sole and exclusive right to manage and control . .

. the affairs and business of the Company . . . execute or cause to be executed

on behalf of the company all instruments and documents, . . . enter into, execute

and deliver any and all agreements, contracts, documents . . . on behalf of the

Company, with any Person for any purpose, . . . [and] do and perform all other

acts necessary or appropriate to the conduct of the Company's business."  (Ex.

1 to White Decl. [114-5].)

    In April 2006, Mr. White terminated his role as a Promove Manager, and

has not since continued in any formal employment or managerial capacity for

Promove or its subsidiaries.  However, even in late 2006, some property

specialists had the impression that Mr. White was still the CEO.  (See Pls.'

Resp. to DSMF ¶¶ 20-21.)  At some point between September 2004 and the

6

commencement of this litigation, Lee Pritchard replaced Mr. White as CEO of Promove.

At the time of the commencement of this litigation, property specialists reported to their store manager, who in turn reported to Regional Director Rebecca Rizek and President Angela Nash.  Ms. Nash reported to CEO Lee Pritchard.  Plaintiffs contend that, even though Defendant White no longer retains a formal position with Promove, property specialists continue to report to Defendant White as a superior.

Having reviewed the facts, the Court now turns to determine the merits of the motions pending before it.

## Discussion

## I. Defendant White's Motion for Summary Judgment

Mr. White moves for summary judgment, arguing that he is not an "employer" within the meaning of the FLSA and thus may not be held individually liable for any violation of the FLSA that occurred during the relevant time period.  After considering the legal standard on summary judgment, the Court turns to the merits of Mr. White's Motion.

7

### A.      Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).   The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### B.      Obligations of an "Employer" under the FLSA to Pay Minimum Wage and Overtime

The FLSA establishes minimum labor standards to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living

8

necessary for health, efficiency, and general well-being of workers."  29 U.S.C.

§ 202(a).  It was designed to "'aid the unprotected, unorganized, and lowest

paid of the nation's working population; that is, those employees who lacked

sufficient bargaining power to secure for themselves a minimum subsistence

wage.'"  See Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004)

(quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 n. 18, 65 S. Ct. 895,

902 n.18, 89 L. Ed. 1296 (1945)).  At all times relevant to this litigation, the

FLSA required covered employers to pay covered employees not less than

$5.15 an hour and to pay overtime pay to covered employees who worked more

than forty hours per week.  29 U.S.C. §§ 206(a)(1), 207(a)(1).

     Liability under the FLSA extends only to an "employer" of the plaintiffs.

Freund v. Hi-Tech Satellite, Inc., 185 F. App'x 782, 785 (11th Cir. 2006).

Under the FLSA, an "employer" includes "any person acting directly or

indirectly in the interest of an employer in relation to an employee . . . ."  29

U.S.C. § 203 (d).  A plaintiff may simultaneously be an employee of multiple

employers.  29 C.F.R.§ 791.2.

     The inquiry under the FLSA as to whether one is an "employer" for

liability purposes is ultimately a legal determination, but requires the district

court to make subsidiary factual findings.  Patel v. Wargo, 803 F.2d 632, 634 &

n.1 (11th Cir. 1986).  The district court makes findings of fact in order to draw

the ultimate legal conclusion.  Id.  "In entertaining and assessing the evidence

with respect to [determining an individual's status as an "employer"], the court

is, in effect, conducting a miniature bench trial."  Martinez-Mendoza v.

Champion Int'l Corp., 340 F.3d 1200, 1209 n.27 (11th Cir. 2003).

        In determining whether an individual is an employer under the FLSA, the

court must examine the facts "in light of the 'economic reality' of the

relationship between the parties."  Villarreal v. Woodham, 113 F. 3d 202, 205

(11th Cir. 1997) (quoting Goldberg v. Whitaker House Co-op, Inc., 366 U.S.

28, 33, 81 S. Ct. 933, 6 L. Ed 2d 100 (1961)).  The Eleventh Circuit has

provided several factors to consider under the economic-reality test in

determining whether a person is an employer under the FLSA: whether the

alleged employer (1) had the power to hire and fire the employees, (2)

supervised and controlled employee work schedules or conditions of

employment, (3) determined the rate and method of payment, and (4)

maintained employment records.  Id.

In addition to the four-factor test provided by <u>Villarreal</u>, the cases provide several additional guideposts in the determination of employer status under the FLSA.  First, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."  <u>Patel</u>, 803 F.2d at 637-38; <u>see also</u> <u>Falk v. Brennan</u>, 414 U.S. 190, 195, 94 S. Ct. 427, 38 L. Ed. 2d 4067 (1973) (noting "expansiveness of the Act's definition of 'employer'" in holding that residential property manager was joint employer of workers formally employed by apartment complex companies).  "To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee."  <u>Patel</u>, 803 F.2d at 638.  But where a corporate officer does not directly supervise employees or engage in day-to-day operations, he may not be held personally liable for unpaid wages.  <u>See</u>, <u>e.g.</u>, <u>Escobar v. Orlando Brewing Partners, Inc.</u>, No. 6:05-CV-63-ORL, 2005 WL 3288749 (M.D. Fla. Dec. 5, 2005) (finding corporate officer not an employer under FLSA where individual "did not direct the day-to-day operations of the business, did not set employee schedules, did not contract with

11

vendors or employees, . . . could not hire or fire employees, [and where h]er

entire contact with the business was limited to writing checks on the corporate

account"). In Patel, the Eleventh Circuit noted that "[m]ost cases finding

corporate officers liable for FLSA violations have involved company-wide

underpayment of large numbers of workers." Patel, 803 F.2d at 638 (citing

Donovan v. Grim Hotel, 747 F.2d 966, 972 (5th Cir. 1984) (177 employees),

and Donovan v. Agnew, 712 F.2d 1509, 1510 (1st Cir. 1983) (99 employees)).

Second, employer status under the FLSA is most strongly demonstrated

where the individual has control over the policies or conduct that allegedly

violates the FLSA. See Freemon v. Foley, 911 F. Supp. 326, 331 (N.D. Ill.

1995 ("[E]ven if a defendant does not exercise exclusive control over all the

day-to-day affairs of the employer, so long as he or she possesses control over

the aspect of employment alleged to have been violated, the FLSA will apply to

that individual."); Rubin v. Torneau, Inc., 797 F. Supp. 247, 253 (S.D.N.Y.

1992) (stating that determination of employer status hinges on whether the

individuals "exer control over the employer's compliance" with the FLSA); see

also Dole v. Simpson, 784 F. Supp. 538 (S.D. Ind. 1991); Rubin v. Tourneau,

Inc., 797 F. Supp. 247, 253 (S.D.N.Y. 1992).

In moving for summary judgment, Defendant White requests that this Court determine as a matter of law, and prior to trial, that he is not an "employer" under the FLSA.  It is this Court, and not a jury, that ultimately is required to make the factual findings subsidiary to that legal determination. <u>Martinez-Mendoza</u>, 340 F.3d at 1209 n.27.  Nevertheless, the traditional rules of summary judgment—and specifically, the requirement that the Court resolve any genuine dispute of material fact in a light most favorable to the non-moving party—continue to pervade this Court's analysis.  <u>See</u> <u>id.</u> at 1207 n.21 (noting that, at summary judgment phase, court must sill consider evidence in the light most favorable to non-moving party, and "determine whether any material facts remain to be litigated").  Because this Court concludes that a genuine dispute of material fact exists concerning the extent of Mr. White's day-to-day involvement and supervisory role in the management of Promove employees, the Court declines on the present posture of this action to hold as a matter of law that Mr. White is not an "employer" under the FLSA.

### C.    A Genuine Dispute of Material Exists as to Whether Mr. White is an "Employer" of Plaintiffs under the FLSA

The parties vigorously dispute the duties and responsibilities that Mr.

White discharged during his tenure as Acting CEO.  According to Mr. White, he operated Promove as its figurehead and strategic director, but generally refrained from managing the day-to-day operations of its property specialists. Mr. White contends that his principal duties were limited to "speaking at business meetings, providing inspirational leadership to the property specialists, starting an internet sales initiative, opening and designing Texas PME stores in Dallas, and marketing the Texas PME business."  (DSMF ¶ 14.)

According to Plaintiffs' evidence, however—which this Court must countenance at this stage in the litigation— Mr. White, in addition to performing the tasks described above, frequently involved himself in the day-to-day sales operations of Promove's retail stores and regularly supervised Promove's property specialists.

1.  *Communications with Property Specialists*

During the relevant time period, Plaintiffs offer evidence that Mr. White visited each of Promove's retail sales locations approximately twice a month, and during those visits, met individually with property specialists to give them performance reviews.  (E.g., Laos Dep. [97-9] at 93-94; Bedell Dep. [106-11] at

14

28-29.)  Plaintiff Bedell, for example, met with Mr. White to receive a

performance review several weeks after she began working for Promove to

discuss her customer database and sales strategy.  She testified as follows in her

deposition:

> I didn't have a database to review because I was so
> new.  But, he was sitting down, individually, with the
> people who had been there a while, and going through
> their different customers and telling them, you know,
> giving them advice as to what they should or
> shouldn't be doing . . . . [H]e had seen a note that
> someone had left saying they hung up.  He was like,
> why the hell are you calling them back, get this one
> out of your database, you are wasting your time, move
> on.  Just very frank advice . . . .

(Bedell Dep. [106-11] at 28-29.)

Mr. White also often called individual employees or sent company-wide

emails to property specialists concerning their productivity, work schedules,

and sales performance.  Mr. White's communications often emphasized to

employees the value of arriving to work early and staying late.  One employee

states that, "[n]o matter where a person ranked for sales, White always pushed

that we should get to work early and stay late."  (Culbreth Decl. [106-17] ¶ 4.)

Certain of Mr. White's emails, another Promove employee testifies, "would

make examples of property specialist[s] who arrived early and stayed late, and

encouraged others to do the same."  (See Lilley Decl. [106-18] ¶ 4; Pls.' Resp.

to DSMF; Culbreth Decl. ¶ 4.)  Plaintiff Bedell testified that:

> Todd would call about your rankings, he would send
> emails asking you to come in—congratulating
> everybody who came in, encouraging you to come in
> early, stay late.  He started a whole [] barrage of "Mr.
> Yes" emails encouraging everyone to be very
> dedicated to Promove . . . . Todd would email you
> from his Stairmaster at 6:30 in the morning,
> encouraging anybody to be there as early as they
> could to get the day started . . . he had [] a night owl
> he would send out at the end of the day for people
> who were staying late or the next day, congratulating
> people who had stayed late, which was during those
> times was pretty much everybody in the office.

(Bedell Dep. [106-11] at 28-30.)

In an effort to encourage employees to work harder, Mr. White also

occasionally asked employees what time they arrived to work, stating that

employee rankings on the company "Top 10" list and entry into the Company

"elite group" would be based on "putting in the extra time."  (Culbreth Decl. ¶

4.)

16

2.    *Mandatory Recall Parties*

During his tenure as CEO, Mr. White also initiated what are referred to by Plaintiffs as "recall parties," in which employees were required to stay after hours or during their days off in order to meet company sales goals. (See Musmecci Decl. ¶¶ 5-7; Trevino Decl. ¶ 6.)  Mr. Culbreth, for example, testifies that he "had to attend mandatory 'Recall Parties,' created by White and Nash . . . every two weeks, and more often during the busy months or months that the company was short of its goal."  (Culbreth Decl. [106-17] ¶ 6.) According to Plaintiffs, property specialists "received emails stating that these parties were mandatory and that if we did not attend, we would be terminated." (Id.)

3.    *Mr. White's Authority as CEO*

Based upon Mr. White's regular communications with property specialists and involvement in supervising employee performance and productivity, several employees testified that they considered Mr. White as their "big, big boss" or the "owner" of Promove.  (Id.)  Moreover, Plaintiffs offer evidence that property specialists understood that, based on Mr. White's status

17

as CEO, he had the authority to terminate their employment.  (E.g., Dowd Dep. [106-13] at 190; Lilley Dep. [97-12] at 127.)  Robert Tugman, for example, a property specialist who worked for Promove between April 2004 and January 2005, testified that Defendant White stated to a co-worker that he would be "out the door" if he did not improve his performance within the company.  Two weeks later, the co-worker was terminated.  (Tugman Decl. [106-23] ¶ 4.)  Brad Culbreth, who was employed by Promove from April 2004 until November 2005, also states that "[i]t was made clear to me by management that White had the power to terminate or to keep you on board.  White even talked with me about being at risk of losing my job.  It was also my understanding that White was the person that gave the order for my termination."  (Culbreth Decl. ¶ 4.)

Finally, Plaintiffs offer evidence that after Mr. White resigned his position as CEO in September 2004, he continued speaking at company meetings, emailing and calling property specialists, and visiting property specialists to discuss their sales performance.  (See Pls.' Resp. DSMF ¶ 20.) Mr. White also continued as a member of the Board of Managers of Promove, and by agreement with the company, had, among other things, "the sole and exclusive right to manage and control . . . the affairs and business of the

18

Company . . . execute or cause to be executed on behalf of the company all instruments and documents, . . . enter into, execute and deliver any and all agreements, contracts, documents . . . on behalf of the Company, with any Person for any purpose, . . . [and] do and perform all other acts necessary or appropriate to the conduct of the Company's business."  (Ex. 1 to White Decl. [114-5].)

### 4.    *Conclusions*

As stated, in determining Mr. White's status in relation to the employees of Promove, the court must examine the facts "in light of the 'economic reality' of the relationship between the parties."  <u>Villarreal</u>,113 F. 3d at 205 (quoting <u>Goldberg</u>, 366 U.S. at 33).  Factors guiding the Court's analysis include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.  <u>Id.</u> at 205.

Plaintiffs offer evidence that Mr. White (1) regularly communicated in a supervisory capacity with Promove's property specialists concerning their

19

productivity, performance, and work schedules; (2) required employees to stay late and attend mandatory "recall parties" to meet sales goals; and (3) held himself out to employees as their superior with the authority to terminate their employ.  Moreover, the undisputed evidence reflects that Mr. White initially set the rate and method of compensation of Promove employees at the inception of the company.  The present record therefore supports at least three of the four factors which militate towards finding Mr. White a joint employer of Plaintiffs under the FLSA.  The record also supports the conclusion that Mr. White had operational control of Promove, and had the authority to control compliance with the FLSA by changing the property specialists' method of compensation and not requiring them to work overtime hours.

Based on a consideration of the four factors described above, the Court concludes that a genuine issue of material fact exists with respect to the degree of control Mr. White exercised over the Plaintiffs.  In view of "[t]he overwhelming weight of authority . . . that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation," Patel, 803 F.2d at 637-38, and in view of Mr. White's apparent authority to control compliance with the FLSA, the Court cannot accept Mr.

White's invitation to hold as a matter of law that he was not an employer, as that term is defined in the FLSA, at any time during the relevant time period.[3] Accordingly, Defendant Todd White's Motion for Summary Judgment on All Claims Asserted Against Him [97] is **DENIED**.

### III.   Plaintiffs' Motion to Supplement the Record

Plaintiffs request in their Motion to Supplement their Response in Opposition to Defendant Todd White's Motion for Summary Judgment [122] that this Court consider the evidence submitted by Mr. White in support of his Motion to Stay that Mr. White entered in to several operating Agreements with Promove in 2005 concerning his duties and responsibilities as a member of the Board of Managers of Promove.  In light of that evidence, Plaintiffs also request that the Court hold as a matter of law that Mr. White is an "employer" under the FLSA.

---

[3] The record reflects that Mr. White may have left Promove prior to the end of the relevant time period and discontinued his supervisory capacity over Promove employees. At trial, Mr. White may elect to demonstrate that his status as an employer under the FLSA ended prior to the relevant time period, and thus he is only partially liable for any FLSA violations that occurred during the relevant time period.

Although on the present record, the Court might have been inclined to draw the conclusion that Mr. White is indeed an employer of Plaintiffs under the FLSA, the Court declines to do so on the present posture of Plaintiffs' request.  Plaintiffs have not moved for partial summary judgment, and thus have avoided the procedural mandates which normally accompany a request for a Court to enter a partial legal judgment.  Most significantly, Defendant White has not had the occasion to dispute Plaintiffs' Statement of Material Facts, upon which Plaintiffs rely in support of their contention that Mr. White is an employer under the FLSA as a matter of law.  (<u>See</u> PSMF [106-3] (filed in connection with their Resp. to Defs.' Mot. for Summ. J.).)  Absent such an opportunity, and because the Court has concluded above that a genuine dispute of material fact exists as to whether Mr. White engaged in the conduct required to establish his status as an employer under the FLSA, the Court will reserve that legal determination until it has an opportunity to view the evidence and the credibility of witness testimony at trial.

Insofar as Plaintiffs seek to supplement the record with the evidence of Mr. White's Operating Agreements with Promove, however, their Motion to

22

Supplement their Response in Opposition to Defendant Todd White's Motion for Summary Judgment [122] is **GRANTED**.

## IV.   Defendant White's Motion to Stay

In his Motion to Stay the Proceedings Against Him [114], Defendant Todd White requests, in the event that his Motion for Summary Judgment is denied, that this Court stay this litigation until the resolution of the bankruptcy proceedings against the other two Defendants in this action.  See In re: Renter Magnet, LLC d/b/a Promove, LLC, No. 06-76033-crm (N.D. Ga. Bankr. filed Dec. 7, 2006); In re: Promove Texas, LLC d/b/a Promove, No. 16-76036-crm (N.D. Ga. Bankr. filed Dec. 7, 2006).  After reviewing the parties' filings on this matter, the Court concludes that efficiency is not best served by staying this action.[4]  Accordingly, Defendant Todd White's Motion to Stay the Proceedings Against Him [114] is **DENIED.**  Defendant White is **ORDERED** to file his

---

[4] The debtor-Defendants have sought in their bankruptcy proceedings to extend the automatic stay arising from the bankruptcy proceeding to Mr. White.  See In re: Renter Magnet, LLC d/b/a Promove, LLC, No. 06-76033-crm (Docket No. 49).  Under Sections 105 and 362 of the Bankruptcy Code, the Bankruptcy Court has the authority to grant such a request.  11 U.S.C. § 105(a);  11 U.S.C. § 362.  The Bankruptcy Court is better suited to determine whether an action against a non-debtor may adversely affect the debtor-Defendants' assets.  See Regency Realty Assocs. v. Howard Fertilizer, Inc., 179 B.R. 717 (Bankr. M.D. Fla. 1995).

23

AO 72A
(Rev.8/82)

response to Plaintiffs' Motion for Summary Judgment [95] on or before August 16, 2007.

**Conclusion**

For the foregoing reasons, insofar as Defendant Todd White seeks judgment as a matter of law that he is not an "employer" under the FLSA with respect to the Plaintiffs, his Motion for Partial Summary Judgment [97] is **DENIED**.  Defendant Todd White's Motion to Stay the Proceedings Against Him [114] is **DENIED**.  Defendant White is **ORDERED** to file his response to Plaintiffs' Motion for Summary Judgment [95] on or before August 16, 2007. Insofar as Plaintiffs seek to supplement the record with the evidence of Defendant White's Operating Agreements with Promove, their Motion to Supplement [122] is **GRANTED**.

**SO ORDERED** this   7th   day of August, 2007.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

24
