# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RICHARD RUSSELL, SHERRI
BRISTOW, JASON ANTHONY,
JIM LAOS, REGINA BEDELL,
JEREMIAH DOWD, and
KATHERINE LILLEY, individually
and on behalf of others similarly
situated,

     Plaintiffs,

v.

PROMOVE, LLC, TEXAS PME,
LLC, and TODD WHITE,

     Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.
1:06-CV-00659-RWS

## ORDER

This case comes before the Court on Defendants' Motion for Summary

Judgment as to Plaintiff Regina Bedell's Claim [90]; Plaintiffs' Motion for

Partial Summary Judgment [95]; Plaintiffs and Defendant White's Joint Motion

to Amend Complaint [156]; Non-Parties Renter Magnet Acquisition, LLC,

Promove Georgia, LLC, and Promove Texas II, LLC's Motion to Strike Reply

[171];  Non-Parties Renter Magnet Acquisition, LLC, Promove Georgia, LLC, and Promove Texas II, LLC's Motion for Leave to File Supplemental Brief [172]; Non-Party R. Lee Pritchard's Motion to Strike Reply [173]; and Non-Party R. Lee Pritchard's Motion for Leave to File Supplemental Brief [174]. After a review of the record, the Court enters the following Order.

## Background

Plaintiffs, as former employees of Defendants' residential housing placement company at various branch offices brought this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), against Promove LLC, Texas PME, LLC (collectively "Promove"), and Promove's former CEO, Todd White, to recover minimum wage and overtime compensation that they allege was unlawfully withheld from them and others similarly situated during their employment.[1]  The Court has certified a class of Promove employees who held the title of "property specialists" and "senior property specialists" in the three years prior to the mailing of notice to the prospective class. (See Order dated Nov. 9, 2006 [100] at 6.)

---

[1]This Order incorporates by reference the factual section contained in the Court's Order dated Aug. 7, 2007. [134]

On December 7, 2006, the corporate defendants Promove LLC and Texas PME, LLC filed for protection under Chapter 11 of the United States Bankruptcy Code. This filing automatically stayed the prosecution of the instant action against the corporate defendants pursuant to 11 U.SC. §362(a)(1). Plaintiffs and Plaintiffs' class were properly notified of the bankruptcy proceeding. (Dkt. No. [160] at 3.) Following a court-appointed sales consultant's auction of the corporate defendants' assets, Bankruptcy Judge C. Ray Mullins authorized a sale of the assets to Renter Magnet Acquisition, LLC ("RMA"). (See Order dated January 19, 2006.) Such resolution by the Bankruptcy Court automatically lifted the stay on the case herein. Plaintiffs allege that non-party R. Lee Pritchard formed RMA days prior to the bankruptcy filing, with the intent of acquiring the assets of the corporate defendants. (Dkt. No. [168] at 3.)

Having reviewed the facts and the parties' allegations, the Court now turns to the motions pending before it.

## Discussion

### I.    Parties' Motions for Summary Judgment

#### A.    Summary Judgment Standard

3

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

With this standard as a foundation, the Court shall address the merits of the Parties' motions for summary judgment.

B.   <u>Defendants' Motion for Summary Judgment as to Plaintiff Regina Bedell's Claim</u>

Defendants seek judgment as a matter of law on Plaintiff Regina Bedell's

AO 72A
(Rev.8/82)

("Bedell") claim for overtime compensation under the FLSA. (Dkt. No. [90].)

Defendants contend that Bedell should be estopped from pursuing her claim

because she and her husband failed to disclose her involvement in this pending

lawsuit in a sworn Chapter 13 bankruptcy petition filed in the Bankruptcy Court

for the Northern District of Georgia. (Id. at 2.) According to the "Statement of

Financial Affairs" filed before the Bankruptcy Court, Plaintiff Bedell was

required to "[l]ist all suits and administrative proceedings to which [she] is or

was a party within one year immediately preceding the filing of this bankruptcy

case." (See Statement of Financial Affairs). Although this case was pending at

the time of the bankruptcy filing, Plaintiff Bedell and her husband did not

disclose the pendency of this lawsuit. (Id.)

Defendants argue that the doctrine of judicial estoppel precludes the

Plaintiff from asserting a position in this judicial proceeding that contradicts the

position she took under oath in a bankruptcy proceeding. Parker v. Wendy's

Int'l, Inc., 365 F.3d 1268, 1271 (11th Cir. 2004). The Eleventh Circuit has

adopted a two-prong test for determining the application of judicial estoppel.

First, the prior inconsistent position must be asserted under oath. Burnes v.

Pemco Aeroplex, 291 F.3d 1282, 1285-88 (11th Cir. 2002). Next, the court

considers whether the inconsistent statements amount to a manipulation of the judicial system.  See id. at 1287-88.  Defendants argue that Plaintiff made inconsistent statements to the Bankruptcy Court under oath and had a clear motive to conceal the present action from the bankruptcy court so that she could "keep any proceeds for herself and not have them become part of the bankruptcy estate." Barger v. City of Cartersville, 348 F.3d 1289, 1296 (11th Cir. 2003).  Defendants contend therefore, that judicial estoppel should be applied to bar Plaintiff Bedell from pursuing her FLSA claim. (Dkt. no. [90] at 6); De Leon v. Comcar Indus., Inc., 321 F.3d 1289, 1291 (11th Cir. 2003) ("judicial estoppel bars a plaintiff from asserting claims previously undisclosed to the bankruptcy court where the plaintiff both knew about the undisclosed claims and had a motive to conceal them").

In response, Plaintiff Bedell states that her failure to disclose this action in the bankruptcy filings was the unintentional result of a misunderstanding about who was covered by the bankruptcy. (Dkt. No. [99] at 3.)  Once Plaintiff Bedell learned that she, in addition to her husband,  would be included in the bankruptcy, she allegedly decided not to pursue it. (Id.)  Plaintiff argues that as she lacked any "intent to deceive anyone, hide potential assets, or make a

mockery of the judicial system," the doctrine of judicial estoppel should not be applied to bar her FLSA claim as a matter of law. See Strauss v. Rent-A-Center, Inc., 2006 WL 1914219 (11th Cir. July 11, 2006).

The Court finds that Plaintiff Bedell should not be estopped from asserting her claims. Construing all facts in the light most favorable to the non-moving party, the Court finds that Plaintiff Bedell lacked the intent to manipulate the judicial system by omitting her involvement in the pending case. Further, the withdrawal of the bankruptcy petition ensures that there is "no 'risk of inconsistent court determinations,' and thus poses little threat to judicial integrity." New Hampshire v. Maine, 532 U.S. 742, 750-751 (2001); Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (7th Cir. 1982). Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff Regina Bedell's Claims [90] is **DENIED**.

     C.     Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs seek summary judgment on Defendants' retail or service exemption defense and also on the issue of liquidated damages. [95]. Plaintiffs argue that as a matter of law, Defendants cannot assert the retail exemption to the FLSA because they cannot meet the burden of demonstrating that their

AO 72A
(Rev.8/82)

business is a "retail" establishment. (Id. at 2.)  Section 7 of the FLSA sets forth

the requirements regarding overtime compensation. 29 U.S.C. §207 *et seq.*

Excluded from the overtime compensation requirement are "retail and service"

establishments:

> if (1) the regular rate of pay of such employee is in excess of one and
> one-half times the minimum hourly rate applicable to him under
> section 206 of this title, and (2) more than half his compensation for a
> representative period (not less than one month) represents
> commissions on goods or services. In determining the proportion of
> compensation representing commissions, all earnings resulting from
> the application of a bona fide commission rate shall be deemed
> commissions on goods or services without regard to whether the
> computed commissions exceed the draw or guarantee.

29 U.S.C. §207(i).

A retail or service establishment is defined as "an establishment 75 per

centum of whose annual dollar volume of sales of goods or services (or of both)

is not for resale and is recognized as retail sales or services in the particular

industry." 29 U.S.C. § 213(a)(2)(1988); 29 C.F.R § 779.312.  First, Plaintiffs

argue that the Defendants' business is not regarded as retail and that such a

concept cannot be artificially created in an industry that lacks a traditional

concept of retail and servicing. (Dkt. No. [95] at 12); Schussler v. Employment

Consultants, 333 F.Supp. 1387, 1390 (N.D. Ill. 1971). Plaintiffs argue that the

"mom and pop" type shops which conduct similar business to the Defendants do not comprise an apartment locator industry. (Id. at 13.) In response, Defendants assert that when Defendant Todd White founded the predecessor of ProMove in 1990, he relied on industry standards to determine employee payment and commission structure. (Dkt. No. [142] at 10.)

Next, Plaintiffs contrast the Defendants' business with establishments identified by the Department of Labor ("DOL") as examples of retail and service establishments:

> Typically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process.

29 C.F.R. §779.318.[2] Plaintiffs state that the distinguishing feature preventing Defendants from qualifying as a retail or service enterprise is the lack of sale of goods or services to the general public. (Dkt. No. [95] at 14.) Rather,

---

[2]The Department of Labor sets forth a partial list of specific establishments recognized as service or retail. Included in this list are: automobile repair shops, bicycle shops, book stores, clothing and furniture stores, restaurants, and grocery stores. 29 C.F.R. § 779.320.

9

Defendants serve as a referral source, receiving payment directly from apartment homes as a percentage of the new renter's first month's rent check to the apartment home. (Dkt. No. [145] at 5.) Plaintiffs point to the fact that Defendant ProMove's services are free to renters and the public as evidence that there is no obligation on the part of the renters to compensate ProMove for their services. In fact, there is no obligation on the part of the renter at all. Rather, new renters pay their first month's rent regardless of any involvement or referral from ProMove. No payment is made directly from the renter to the Defendant. (Id.) In response, Defendants contend that a material dispute exists as to the identity of ProMove's customers. (Dkt. No. [142] at 7.) While Plaintiffs contend that the apartment homes are the customers because they pay a referral fee to ProMove, Defendants argue that the prospective renters are ProMove's true customers. (Id.) In support, Defendants point to the fact that ProMove does not receive a commission every time that a prospective renter contacts an apartment home and identifies ProMove as the referring source. Rather, payment to ProMove is contingent upon the payment of the first month's rent, paid by the renter. (Id.) Further, all references in ProMove's 2003 General Office Training Manual and general mission statements refer to

the "customer" as the prospective renter, not the apartment homes. (Id.; Exhibit 1 to Plaintiffs Memorandum of Law in Opposition to Defendant White's Motion for Summary Judgment; Nash Declaration, Exhibit C.) Plaintiffs contend that it operates its business out of a "store" similar to the businesses identified by the DOL as examples of service and retail enterprises. (Dkt. No. [142] at 14.)

Next, Plaintiffs compare ProMove to the establishments identified by the DOL as *lacking* the retail concept. 29 C.F.R. §779.317.[3] Specifically, Plaintiffs contend that ProMove operates in a manner similar to the real estate industry and employment and travel agencies, all of which are excluded from the retail definition by the DOL. (Dkt. No. [95] at 17-19.) Plaintiffs argue that ProMove property specialists operate as agents or brokers to the apartment homes by finding renters for the apartment homes at a fee. Under the Fair Housing Act, a person is in the business of renting or selling dwellings if he has served as an agent within the previous twelve (12) months in "providing sales or rental facilities or sales or rental services in two or more transactions

_____

[3]This section establishes a "partial list of establishments to which the retail concept does not apply" and includes such establishments as: accounting firms, apartment homes, loft rental agencies, real estate companies and brokers. 29 C.F.R. §779.317.

involving the sale or rental of any dwelling or interest therein..." 42 U.S.C. §

3603(c). Plaintiffs allege that ProMove engages in the real estate industry by

finding renters for an apartment for a fee paid by the apartment homes. (Dkt.

No. [95] at 17.) By bringing buyers and sellers together in its role as a

middleman or negotiator, ProMove is acting as a broker. (Dkt. No. [145] at

10.) In response, Defendants assert that ProMove and the property specialists

lack the broker or agency authority to negotiate and bind the apartment homes

and renters into a lease agreement; they can merely identify the available

options to the prospective lenders (Id. at 9.) Further, Defendants argue that

unlike real estate and leasing agents, who lease or sell real estate "space,"

Promove and property specialists provide apartment locator "services" to the

general public. (Dkt. No. [142] at 17.) This distinction was recognized by the

court in Gatto v. Mortgage Specialists of Illinois, 442 F. Supp. 2d 529 (N.D.Ill.

2006) in stating that mortgage loan specialists were covered by the Section 7(i)

exemption because they sold services to the general public and met the

everyday needs of the community.

Finally, Plaintiffs argue that Defendants have violated the recordkeeping

requirements regarding the Section 7(i) exemptions. (Dkt. No. [95] at 20.)

12

Specifically, Defendants allegedly did not "disclose, discuss, and reach an agreement with the employees regarding the 7(i) exemption," nor did they memorialize the agreement and keep sufficient records of the property specialists' hours. (Id.)  Plaintiffs contend that these failures are fatal to ProMove's retail exemption defense.  In response, Defendants point to the lack of authority to support Plaintiffs' position, but nonetheless assert that the commission payment structure was fully disclosed to each property specialist prior to hiring and that the pay records were in compliance with the FLSA requirements. (Dkt. No. [142] at 21.)

   "An employer relying on an exemption to the minimum wage and overtime provisions of the FLSA has the burden of proving the applicability of the exemption.  Given the remedial purpose of the FLSA, the exemptions from the FLSA's coverage must be narrowly construed against the employers seeking to assert them.  An employer seeking to assert an FLSA exemption has the burden of proving that the employee falls plainly and unmistakably within the terms and spirit of the exemption."  Morrison v. Quality Transp. Serv., Inc., 474 F.Supp. 2d 1303, 1308 (S.D. Fla. 2007) (internal citations and quotations omitted).  After the particular activities of a business are defined, the question

of "whether those particular activities exclude [the business] from the overtime benefits of the FLSA is a question of law." (Id.)

The record before the Court sufficiently establishes the nature of ProMove's business to allow the Court to reach a conclusion regarding the claimed exemption. Though the parties disagree as to the conclusions to be drawn from the evidence, the underlying facts are largely undisputed. Prospective renters come into ProMove's business locations and receive referrals to apartment homes. These renters pay nothing for the referral. ProMove's compensation, if any, comes from the apartment homes if the prospective renter chooses the apartment, identifies ProMove as the referral source, and pays the first month's rent. Based on the undisputed facts, the Court concludes that the apartment homes are ProMove's customers. The payment for ProMove's service comes entirely from the apartment homes. The fact that the payment is not made until the first month's rent is paid does not alter the fact that the payment is from the apartment home. ProMove's business serves the apartment homes as its customers, not the general public.

Also, the Court finds that ProMove's business is closely akin to a broker. Even though ProMove does not have the authority to negotiate terms

14

of the lease agreements, it serves the function of bringing the landlords and tenants together much as a real estate agent would do in a real estate transaction. Such businesses have been identified by the DOL as lacking the retail concept. 29 C.F.R. § 779.317. Also, its brokering function occurs prior to the "very end of the stream of distribution," and thus, does not meet the examples of retail and service establishments provided by the DOL. 29 C.F.R. § 779.318.

Based on the foregoing, the Court concludes that Defendants failed to prove the applicability of the Section 7(i) retail or service establishment exemption. Accordingly, Plaintiffs' motion for summary judgment as to Defendants' retail or service exemption defense is **GRANTED**.

Plaintiffs further seek summary judgment on the issue of liquidated damages. "Any employer who violates the provisions of . . . section 207 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had

reasonable grounds for believing that his act or omission was not a violation of

the [FLSA], the court may, in its sound discretion, award no liquidated

damages." 29 U.S.C. § 260.

> The determination of whether an employer acted in good faith
> and had reasonable grounds for believing its act or omission
> was not a violation of the FLSA has both a subjective and
> objective component. Subjective good faith means the employer
> has an honest intention to ascertain what the FLSA requires and
> to act in accordance with it. Objective good faith means the
> employer had reasonable grounds for believing its conduct
> comported with the FLSA. In addition, good faith requires some
> duty to investigate potential liability under the FLSA.

Smyth v. Wynfield, 451 F. Supp. 2d 1327, 1337 (N.D. Ga. 2006) (internal

citations and quotations omitted.

Plaintiffs assert that "Defendants made no effort to determine whether or

not property specialists were properly classified as exempt employees." (Dkt.

No. [95] at 23.) Defendants offered evidence that the property specialists were

treated as exempt employees based "upon the then-existing standard in the

industry whereby property specialists and senior property specialists were paid

straight commissions." (Dkt. No. [142] at 10-11 (citing depositions of White

and Nash).)

AO 72A
(Rev.8/82)

The Court finds that, based on this limited record, there are genuine issues of fact that preclude the granting of summary judgment on the liquidated damages issue. Accordingly, Plaintiffs' motion for summary judgment on the issue of liquidated damages is **DENIED**.

## II.    Plaintiffs and Defendant White's Joint Motion to Amend Complaint

The Russell Plaintiffs and Defendant Todd White jointly move the Court for the addition of corporate defendants Renter Magnet Acquisitions ("RMA"), LLC, ProMove Expansion, LLC, ProMove Georgia, LLC, and ProMove Texas, II, LLC, as well as R. Lee Pritchard, the individual who allegedly maintains control over the originally named corporate defendants and their successor corporations. [156]. The Court shall address the request for addition of the corporate and individual defendants separately.

### A.    Non-Party Corporate Defendants

As to the new corporate parties, Plaintiffs and Defendant White claim that their addition is necessary because the new corporations are the same entities and operated by the same persons who operated the originally named corporate defendants. (Dkt. No. [156] at 8.) Plaintiffs and White allege that the

17

new corporations were formed six (6) days prior to the Chapter 11 bankruptcy proceeding involving the already named corporate defendants. (Id. at 5.) According to the joint motion, following the bankruptcy proceeding, RMA acquired the assets of the named corporate defendants Renter Magnet d/b/a Promove, LLC, and Texas PMC. (Id.)  Plaintiffs and White argue that the sole purpose of the new entities was to acquire the assets of the named corporate defendants after putting those entities into bankruptcy, in an effort to avoid potential liability in the instant matter. (Id. at 8.)  In support, Plaintiffs and White point to the similarities in the daily management, operation, job characteristics, location, workforce, and product between the named corporate defendants and the new entities. (Id. at 17-20.)  This comparison supports Plaintiffs and White's argument that successor employer liability should be applied to the new corporate entities in order to reach a resolution of Plaintiffs' pending claims. (Id. at 21.); See EEOC v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086, 1089-91 (6th Cir. 1974) (outlining the nine relevant factors in determining whether successor employer liability should be imposed.)  In response, the non-party corporate defendants assert that the attempt to add the new entities is a direct violation of an injunction issued by the United States

18

Bankruptcy Court for the Northern District of Georgia. (Dkt. No. [160] at 1.)

When the new entities purchased assets from the named corporate defendants

in the bankruptcy proceeding, they did so pursuant to an authorized sale by

Judge Mullins and "free and clear of all interests, liens, claims, and

encumbrances" except for a bank lien. (January 19 Order, ¶ 9.) The non-party

defendants argue that this authorized sale specifically bars all claims of

successor liability. (Dkt. No. [160] at 6.) Non-party defendants further contend

that Plaintiffs did not object to the sale of assets, nor to the provision in Judge

Mullins' Order which authorized the sale free and clear of all claims.

Therefore, Plaintiffs and White are barred from asserting any claim of

successor liability. The Court finds this argument persuasive. The Bankruptcy

Court's Order expressly prohibits successor liability and authorizes the sale of

assets free and clear of encumbrances. The Court shall respect such a clear

directive. Had the Plaintiffs or White taken issue with the sale or any

provisions of the Order, such objections should have been raised at the time the

Order was entered. Any claims of fraud or deception should have been

AO 72A
(Rev.8/82)

addressed to the Bankruptcy Court and not collaterally in the present case.[4]

Accordingly, due to the ruling of the Bankruptcy Court, this Court finds that the imposition of successor employer liability on the new entities would be inappropriate. Plaintiffs and White's Motion to Amend the Complaint is **DENIED** to the extent it seeks to add new corporate defendants.

### B. Non-Party R.Lee Pritchard

Plaintiffs and Defendant White further move to add R. Lee Pritchard as an individual defendant and seek a three-month discovery period as to this limited claim. (Dkt. No. [156] at 21-24.) Plaintiffs and White contend that since 1997 and throughout the actionable period, Pritchard has served as the manager of all the ProMove entities and has had the authority, responsibility, and control over the payment of property specialists and senior property specialists. (Id. at 22.) As a corporate officer with authority and control over the employer operations, Pritchard should share in the liability for any failure to comply with FLSA regulations. (Id.) In support of allegations of Pritchard's involvement in the ProMove entities, Plaintiffs and White point to sworn

---

[4]Non-party RMA Entities have filed with the Court a Motion to Strike Plaintiffs and Whites' Reply [171] and a Motion for Leave to File Supplemental Brief [172]. Given the Court's ruling on the issue, both motions are **DENIED as moot.**

declarations by members of the management team that worked alongside

Pritchard. (See Nash Declaration, ¶ 4; MacMillan Declaration, ¶ 7; Holbrook

Declaration, ¶ 5; Rizek Declaration, ¶¶ 3 and 4.)  Plaintiffs and White argue

that Pritchard's involvement in the ProMove entities binds him under the

theory of successor employer liability.

In response, Pritchard first makes a similar argument to the non-party

defendants, that the Bankruptcy Court's Order specifically prohibits successor

liability. (Dkt. No. [159] at 10.)  Pritchard further contends that the claims of

four named plaintiffs are barred by the three-year FLSA statute of limitations

because the claims do not relate back to the date of the original filings.  The

Court need not address the issue of the statute of limitations on the claims of

certain plaintiffs.  As the Court stated above, the Bankruptcy Court's Order

specifically barred the application of successor employer liability.  To the

extent that Plaintiffs and White seek to add Pritchard under this theory, they

may not do so.[5]  Therefore, Plaintiffs and White's Motion to Amend the

_____

[5]In a similar fashion to the non-party corporate defendants, non-party Pritchard has
filed with the Court a Motion to Strike Plaintiffs and Whites' Reply [ 173] and a Motion
for Leave to File Supplemental Brief [174]. Again, given the Court's ruling on the issue,
both motions are **DENIED as moot**.

Complaint is **DENIED** to the extent it seeks to add Pritchard as an individual defendant.

Therefore, Plaintiffs and Defendant White's Joint Motion to Amend Complaint [156] is **DENIED**.

## Conclusion

Based on the foregoing, Defendants' Motion for Summary Judgment as to Plaintiff Regina Bedell's Claims [90] is **DENIED**; Plaintiffs' Motion for Partial Summary Judgment [95] is **GRANTED IN PART and DENIED IN PART**; Plaintiffs and Defendant White's Joint Motion to Amend Complaint [156] is **DENIED**; Non-Parties Renter Magnet Acquisition, LLC, Promove Georgia, LLC, and Promove Texas II, LLC's Motion to Strike Reply [171] is **DENIED as moot**; Non-Parties Renter Magnet Acquisition, LLC, Promove Georgia, LLC, and Promove Texas II, LLC's Motion for Leave to File Supplemental Brief [172] is **DENIED as moot**; Non-Party R. Lee Pritchard's Motion to Strike Reply [173] is **DENIED as moot**; and Non-Party R. Lee Pritchard's Motion for Leave to File Supplemental Brief [174] is **DENIED as moot**.

22

**SO ORDERED,** this   5th   day of May, 2009.


_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)